**In re LANE, Appellants,**

v.

**TRUSTEES OF UNION TOWNSHIP, Appellees.**

[Cite as *In re Lane v. Union Twp. Trustees,* 162 Ohio App.3d 37, 2005-Ohio-3497.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 04CA2787.

June 29, 2005.

Margulis, Gussler, Hall & Hosterman, and Leo J. Hall, for appellants.

Scott W. Nusbaum, for appellees.

---

ABELE, Presiding Judge.

{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment that affirmed a resolution of the Union Township Trustees that directed a partition-fence replacement and ordered adjacent property owners to share the expenses involved in the replacement.

{¶ 2} Jay and Robin Lane, plaintiffs below and appellants herein, assign the following error for review:

The decision below is against the manifest weight of the evidence.

{¶ 3} Appellants own ten acres on Lutz Road in Union Township. They use three acres for their home and lease the remainder to a farmer who grows crops and pays them rent. Bob and Irene Triplett own land adjacent to appellants' property. The Tripletts raise cattle on their property. Although a fence separates the properties, the fence is in disrepair and no longer contains the Tripletts' cattle. In fact, on several occasions, cattle have wandered onto appellants' property, left manure, and damaged their tenant's crops.

{¶ 4} Appellants reported these incidents to the sheriff and, apparently, filed suit against the Tripletts in small claims court.[1] The trustees eventually became involved in the dispute and invited both parties to a meeting to resolve the matter. When that option failed, the trustees met with the parties at their homes and "walked" the fence line. On October 20, 2003, the trustees issued a resolution that directed the parties to replace the fence to keep Triplett cattle on Triplett land. The trustees, in an unenviable position, ordered each party to pay one half of the fence expense.

{¶ 5} Appellants commenced the instant action on November 12, 2003, as an appeal from that resolution. See R.C. 2506.01.[2] The gist of the case appeared to be that the trustees had failed to follow the correct procedure when they ordered appellants to pay one half of the partition-fence expenses.

{¶ 6} The matter came on for a de novo hearing in the common pleas court. At the hearing, Robert T. Harp and Harold W. Bennett, both township trustees, testified concerning the procedures they followed before they ordered the partition fence to be erected and each side to pay one half of the cost. Both testified

---

1. It is unclear from the record what became of those small claims actions.

2. R.C. 2506.01 provides that every final order from a political subdivision may be reviewed by the common pleas court of the county in which the principal office of the political subdivision is located.

that they gave each side time to state its case, and then they described their deliberations to determine that the benefits from erecting the fence outweigh the cost.

{¶ 7} Appellant Jay Lane testified that when the trustees "walked" the fenceline, he heard no discussion about the cost or about how a fence may affect the property value either before or after the fence is erected. Further, he opined that his current property value is $160,000 and that it will be the same after a fence is erected. Michael Putnam, an appraiser, testified that the land has a $150,000 fair market value and that the value will not be enhanced by a new fence. In Putnam's opinion, the realty value will not be enhanced unless it is completely enclosed by a new fence.

{¶ 8} The trial court affirmed the trustees' resolution and concluded that appellants had the burden to prove that the fence did not benefit their property and that they failed to carry that burden. As to the testimony that a fence will not benefit the appellants' property, the court explicitly found this testimony to be less credible than the trustees' testimony that the fence will benefit the value of the property. This appeal followed.

■■■■■■ {¶ 9} Appellants' assignment of error asserts that the trial court's judgment is against the manifest weight of the evidence.[3] R.C. 971.02 [4] states that owners of adjoining land must build and maintain, in equal shares, all partition fences.

---

3. Appellants cite 1983 Ohio Atty.Gen.Ops. No. 072 to support the proposition that the trustees are required to conduct a "formal hearing." We do not believe that this opinion necessarily supports that argument. The Attorney General wrote that "all persons whose interests are to be adjudicated in an R.C. 971.04 hearing *should be afforded the opportunity* to present arguments, to offer and cross examine witnesses, to submit evidence for consideration by the board of township trustees, and to utilize the authority of the board to compel the attendance of witnesses." (Emphasis added.) Trustees Harp and Bennett both testified that appellants had an opportunity to state their case. We interpret this testimony to mean that appellants had an opportunity to present arguments and witnesses but chose not to do so. We believe this opportunity is sufficient to comply with the procedure set out by the Attorney General. We also note that in some cases, township trustees have held formal hearings before making determinations. See, e.g., *Duncan v. Vernon Twp. Trustees* (Jan. 16, 2001), Clinton App. No. CA2000–05–015, 2001 WL 32806; *In re Partition Fence Between Howell & Leas* (Mar. 29, 2000), Harrison App. No. 514, 2000 WL 341124. It may well be that the better practice is for trustees to hold formal evidentiary hearings. In this case however, the appellants apparently had no evidence to present at that time and waived the issue.

4. R.C. 971.04 provides:
When a person neglects to build or repair a partition fence, or the portion thereof which he is required to build or maintain, the aggrieved person may complain to the board of township trustees of the township in which such land or fence is located. Such board, after not less than ten days' written notice to all adjoining landowners of the time and place of meeting, shall view the fence or premises where such fence is to be built, and assign, in writing, to each person his equal share thereof, to be constructed or kept in repair by him.

{¶ 10} When examining this and similar statutes, the Ohio Supreme Court held that before landowners can be compelled to bear the costs of improvements, they must receive benefits that exceed the expenses arising from the construction and maintenance of those improvements (in this case, partition fences). See *Glass v. Dryden* (1969), 18 Ohio St.2d 149, 47 O.O.2d 313, 248 N.E.2d 54. See, also, *Alma Coal Co. v. Cozad* (1909), 79 Ohio St. 348, 87 N.E. 172, syllabus; *Zarbaugh v. Ellinger* (1918), 99 Ohio St. 133, 124 N.E. 68; *Schiff v. Columbus* (1967), 9 Ohio St.2d 31, 38 O.O.2d 94, 223 N.E.2d 54, paragraph four of the syllabus; *Wolfe v. Avon* (1984), 11 Ohio St.3d 81, 84, 11 OBR 324, 463 N.E.2d 1251. In 1974 Atty.Gen.Ops. No. 026, the Ohio Attorney General reviewed the case law and wrote:

1. A landowner must comply with R.C. 971.02 and share in the construction and maintenance cost of a partition fence unless the cost of construction exceeds the difference between the value of his land before and after the installation of the fence.

2. The board of township trustees is responsible for making the initial determination of whether a landowner will receive benefits greater than the costs incurred in the construction of a partition fence. R.C. 971.04.

See, also, 1983 Atty.Gen.Ops. No. 073. In other words, appellants should not be required to bear one half of the cost of the fence unless the benefit outweighs the costs.

{¶ 11} In *Brand v. Marion Twp. Trustees* (Aug. 8, 1991), Hocking App. No. 90–CA–12, 1991 WL 156400, we reversed a trustee resolution to construct a partition fence. Although the trustees generally determined that the property owner would benefit from the fence, they did not explicitly determine whether that benefit outweighed the cost. In the case sub judice, although both Trustee Harp and Trustee Bennett testified that they weighed the benefits of the fence against the cost, we find nothing in the record to substantiate their conclusions.

{¶ 12} Thus, it does not appear that the trustees determined the value of the properties without the fence and then estimated the value after the fence is erected. Also, we find no other evidence of value (e.g., an appraiser's report, property-tax valuations on similar properties) to support this view. Moreover, although both trustees provided very rough estimates as to the cost of the fence, neither estimate appears to have been sufficiently precise to allow a quantitative analysis of whether the benefit outweighs the cost.[5]

---

5. Trustee Harp testified that he thought a fence would cost somewhere "in the neighborhood of three to four thousand dollars." Trustee Bennett testified that he had "a general understanding of what it would cost to erect [the] fence" based on his years as a farmer and selling rolls of fence when he worked for a farm-supply dealer. While we have the utmost respect for

{¶ 13} We noted in *Brand* that the trustees "presented no evidence that the value of the fence equals or exceeds the cost of the cost of fence." Because insufficient evidence supported the trustees' decision, we reversed that judgment. A similar problem is present here. Although the trustees have asserted that the benefits outweighed the cost, we find no evidence to substantiate that assertion. The trustees did not clearly establish any property value and a cost for the fence. Thus, it is nearly impossible to reach a definitive conclusion as to whether the benefit outweighs the costs.

{¶ 14} We also noted in *Gunlock v. Green Twp. Trustees* (Jan. 26, 1998), Ross App. No. 97CA2270, 1998 WL 40670, that we will not reverse a trial court decision in an R.C. Chapter 2506 appeal if it is supported by a preponderance of reliable, probative, and substantial evidence. This limited standard of review is "tantamount to evaluating whether the trial court abused its discretion." Id. In finding that insufficient evidence exists to support this decision, we are not reweighing that evidence but, rather, holding that the evidence adduced at the initial determination is insufficient as a matter of law to support the trustees' determination that the benefits of a partition fence outweigh the cost.

{¶ 15} Accordingly, we hereby sustain appellants' assignment of error and reverse the trial court's judgment. Pursuant to appellants' request and *State ex rel. Chagrin Falls v. Geauga Cty. Bd. of Commrs.*, 96 Ohio St.3d 400, 2002-Ohio-4906, 775 N.E.2d 512, we remand this matter to the trustees of Union Township for further hearing and consideration.

Judgment reversed
and cause remanded.[6]

HARSHA, J., concurs in judgment only.

McFARLAND, J., dissents.

---

their experience and opinions, the trustees' testimony is too vague to support a meaningful cost-benefit analysis.

6. We emphasize that we find no fault with the trial court or the township trustees in this case. Two problems exist with R.C. Chapter 971 cases. The first is procedural. The statute (R.C. 971.04) does not require a cost-benefit analysis. This is something that the Ohio Supreme Court created in *Glass v. Dryden* (1969), 18 Ohio St.2d 149, 47 O.O.2d 313, 248 N.E.2d 54. Since then, no guidance has been provided as to how to carry out that analysis.

Several years ago, the Ohio Farm Bureau Federation filed an amicus brief in *Gunlock v. Green Twp. Trustees* (Jan. 26, 1998), Ross App. No. 97CA2270, 1998 WL 40670, and persuasively argued that there have been many "inconsistent procedures and decisions" in cost/benefit analysis under R.C. Chapter 971. Although the federation cites a number of factors for those inconsistencies, we believe that the inconsistencies can be attributed to a lack of guidance on how to conduct the analyses. Because the Ohio Supreme Court mandated that such analyses be undertaken in the first place, maybe that court should revisit this issue and

**42**

HARSHA, Judge, concurring in judgment only.

{¶ 16} I agree with the principal opinion that the lack of guidance from both the legislature and the appellate courts leaves the parties, the trustees, and the common pleas courts in the dark. Thus, I attempt to identify the procedure for partition-fence assessments, not because it is particularly illuminating, but because the attempt is at least a start, i.e., a flickering candle in an otherwise caliginous passageway.

{¶ 17} When adjoining landowners are unable to agree upon the building or maintenance of a partition fence, "the aggrieved person" may file a written complaint with the township trustees. See R.C. 971.04. The trustees must then give at least ten days' written notice to all adjoining landowners of the date, time, and place of a meeting to view the fence. Id. The ultimate purpose of this meeting is to assign in writing the costs of building or maintaining the fence.

{¶ 18} At the viewing, any person who objects to sharing in the cost must advise the trustees and the complaining party that his or her land will not benefit from the fence. This allegation is necessary to contest the presumption of a benefit that inures in favor of assessing the cost equally against adjoining owners. If the party seeking the apportionment contests the objecting party's allegation of no benefit, he or she must advise the trustees and the other landowner(s). At that point, the trustees should continue the meeting to a date, time, and place for the purpose of taking evidence under oath. If all parties agree, that hearing may occur immediately after the viewing. At a minimum, the hearing should be memorialized in some form, as a record is important for further proceedings. All parties should have the opportunity to present arguments, to offer and cross-examine witnesses, to submit evidence, and to compel the attendance of witnesses. See 2002 Ohio Atty.Gen.Ops. No. 18 and the statutes cited therein.

---

provide some much needed instruction. Better yet, the Ohio General Assembly could codify a procedure to be followed in these cases.

The second problem is that R.C. Chapter 971 is anachronistic and needs to be revisited. Here again, the amicus brief of the Ohio Farm Bureau Federation points out that these laws are the product of a bygone era when most rural land owners owned livestock. In past years, laws of this sort made perfect sense because they prohibited livestock on one farm from trespassing onto another farm. Today, because fewer farmers own livestock, and because much of our rural land has been developed for residential purposes, the utility of this law to those who don't own livestock is questionable. In the case sub judice, for example, the Tripletts have a duty to keep their livestock on their property. Appellants have no livestock trespassing on the Tripletts' land. If they did, this case would be different altogether, and a principled argument could be made that both benefit from a fence to keep out the others' cattle. Under the facts of this case, however, it hardly seems fair to require appellants to pay for something that, essentially, the Tripletts have a legal obligation to do anyway.

Of course, it is this court's duty to enforce the laws, and R.C. Chapter 971 is a perfectly legitimate exercise of the state's police powers to maintain order in rural areas. Obviously, we welcome further scrutiny and review in this matter.

{¶ 19} At this hearing, the objecting party has the burden to introduce evidence that rebuts the presumption of benefit. See *Gunlock v. Green Twp. Trustees* (Jan. 26, 1998), Ross App. No. 97CA2270., 1998 WL 40670  That burden is met by presenting some testimony or other evidence that the objecting party's cost of building the fence exceeds the benefit—i.e., that the cost exceeds the difference in the value of land before and after the construction or repair of the fence. See *Glass v. Dryden*, supra. Thus, the objecting party would have to offer evidence of both the costs of construction and the value of the land before and after the improvement. Then, the presumption is rebutted, and the party seeking apportionment may offer contrary evidence. The board of trustees is then responsible for determining whether the benefit exceeds the cost.

{¶ 20} When the objecting party fails to allege a lack of benefit or fails to rebut the presumption, the trustees assign the costs under the presumption. When the issue of benefit is properly raised and contested, the trustees must decide which party has prevailed. If they find that the benefit to the objecting party's land exceeds the cost of construction or maintenance, the trustees shall issue a written order that instructs the parties to share the costs of the improvement. If the contrary is true, the trustees must deny the apportionment. Regardless of which conclusion they reach, the trustees' order should include finding on the cost of the fence and the value of the benefit to the objecting party's land. See, generally, 2002 Ohio Atty.Gen.Ops. No. 18.

{¶ 21} A landowner who is unhappy with the trustees' decision may appeal that decision to the common pleas court under R.C. 2506.01. See *Shewmaker v. Clay Twp. Trustees* (June 30, 1999), Highland App. No. 98CA29, 1999 WL 482620. The common pleas court's review is confined to the transcript of the hearing before the trustees unless one of the exceptions listed in R.C. 2506.03(A)(1) through (5) applies. If one of the exceptions applies, then the court may allow additional evidence and "shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party." R.C. 2506.03(A).

{¶ 22} Because the procedure below did not substantially comply with these requirements, I concur in reversing and remanding to the trial court with instructions to remand to the trustees.